## In re HOWARD.
### Patent Appeal No. 2776.

Court of Customs and Patent Appeals.
Dec. 7, 1931.

Vernon M. Dorsey, of Washington, D. C. (S. F. Parham, of Washington, D. C., and L. G. Bates, of Hartford, Conn., of counsel), for appellant

T. A. Hostetler, of Washington, D. C., for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, refusing to allow claims A and B of appellant's application, filed February 27, 1919, which claims read as follows:

"A. Apparatus for feeding molten glass in controllably shaped, suspended mold charges, comprising a container for the glass provided with an impulsion chamber having downwardly converging sides and having a discharge outlet in its bottom, and a discharge controlling implement adapted to reciprocate vertically above said outlet, and having its lower end in said well when said implement is in its lowest position but when in such position being out of contact with the walls of the well, the converging side walls of the chamber cooperating with the implement to vary the cross section of the space between the walls of the chamber, and the implement to thereby vary the dynamic effect of the implement upon the discharging glass to control the rate of discharge of the glass and to thereby controllably shape charges while in free suspension from the outlet.

"B. Apparatus for feeding molten glass in controllably shaped, suspended mold charges, comprising a container for the glass provided with a well having downwardly converging sides and having a discharge outlet in its bottom of smaller diameter than the bottom of said well and a discharge controlling implement adapted to reciprocate vertically above said outlet, and having its lower end in said well when said implement is in its lowest position but when in such position being out of contact with the walls of the well, the converging side walls of the well cooperating with the implement to vary the cross section of the space between the walls of the well and the implement to thereby vary the dynamic effect of the implement upon the discharging glass to control the rate of discharge of the glass and to thereby controllably shape charges while in free suspension from the outlet."

The sole reference relied on is: Peiler, 1,655,391, January 3, 1928.

The application upon which the Peiler patent was based was filed on May 5, 1919.

It appears that appellant's application and the said Peiler patent. No. 1,655,391.

are both owned by the Hartford Empire Company, and were so owned prior to January 3, 1928, the date of issue of the Peiler patent.

The alleged invention involved is sufficiently described in the claims above quoted.

The appellant, in his brief, contends as follows: " * ' * The construction which comprises the *downwardly tapering or converging walls of the impulsion chamber in combination with the reciprocating charge-shape-controlling plunger* having its lower end in the impulsion chamber, but out of contact with the walls thereof when the plunger is at the lower end of its stroke, embodies an improvement in a 'suspended charge' feeder of the class to which the appellant's invention belongs. * * * " (Italics quoted.)

It is admitted that substantially the same construction described in the claims herein is disclosed but not claimed in the said Peiler patent.

Appellant contends that he (Howard) invented the impulsion chamber with inclined walls, a specific invention, and that Peiler, the patentee, made a generic invention not limited to inclined walls.

The Howard application having been filed prior to the application upon which the Peiler patent was granted, if there were no other facts to be considered, the presumption would be that Howard was the first inventor of the structure disclosed and claimed in his application.

The other facts to be considered are that both the Peiler application and the Howard application were, at the time of the issue of said Peiler patent, owned by a common assignee, and on December 2, 1927, which date is prior to the issue of the said Peiler patent, Peiler made an affidavit under rule 75 of the Patent Office that he had conceived and reduced to practice, inter alia, the invention embraced in claims 47 and 55 of his application prior to February 1, 1917, which is long prior to the filing date of the Howard application. In said Peiler application there appeared a claim numbered 25, which read as follows: "25. Apparatus for feeding molten glass in a succession of freely hanging mold charges, comprising an impulsion chamber having a discharge outlet, and a movable impeller constantly projecting into said impulsion chamber toward said outlet and constantly spaced from the walls of said chamber sufficiently to provide a restricted annular flow-passage for the glass, the cross sectional area of said annular passage progressively decreasing as the said impeller is lowered."

It will be observed that said claim 25 contains the same element as the claims here in issue, viz., the downwardly converging sides of the impulsion chamber, described in said Peiler claim 25 as "the cross sectional area of said annular passage progressively decreasing as the said impeller is lowered."

In the Peiler affidavit above referred to, this claim 25 is expressly excepted therefrom, so that there is nothing in the record tending to show that Peiler was the first inventor of the downwardly converging sides of the impulsion chamber, but, said affidavit of Peiler expressly exempting claim 25 from the application of the affidavit, it affirmatively indicates that he was not the first inventor of such element.

The decision appealed from is a decision rendered upon a request by appellant for a reconsideration of a decision rendered by the Board of Appeals, holding, inter alia, that claims 55 and 57 of the Peiler patent embrace the same construction of the impulsion chamber as the claims here in issue, and rejecting the claims for that reason. In the decision appealed from, the rejection of the claims was made final. In said decision, the Board admits error in its previous decision that the claims in issue were embraced in claim 57 of the Peiler patent, for the reason that said claim was a combination claim not disclosed in the claims in issue, but stated that: "These claims are directed to the same subject matter as claims 47 and 55 of the Peiler patent No. 1,655,391."

The Board in the decision appealed from does not contend that said claims 47 and 55 disclose the same construction as is embraced in the claims in issue, but takes the position that the disclosure in the Peiler specification shows the identical converging sides of the impulsion chamber, embraced in the claims in issue, and that without such disclosure there would have been no consideration for the allowance of said claims 47 and 55 of the Peiler patent, and that therefore, as the specific construction here involved was necessary to warrant the allowance of said claims 47 and 55 of the Peiler patent, appellant, being the common assignee of both Peiler and Howard, is not entitled to the allowance of the claims here in issue.

Before considering the question thus raised, we would observe that we do not think that the invention here in issue is

embraced in said claims 47 and 55 of the Peiler patent, and, as we understand the Board's decision appealed from, such contention is not made therein.

The ground of rejection by the Board in the decision appealed from is stated therein as follows:

"It is stated in the brief that when the present application of Howard was assigned to the owners of the Peiler application, the latter contained a claim 25 covering the specific construction of claims A and B and upon investigation the assignees of both applications found that Peiler was the prior inventor of the broad matter and Howard of the impulsion chamber having downwardly converging sides and claim 25 of the Peiler application was canceled for this reason. The contention is that the election thus made was equivalent to an interference proceeding with a split decision awarding priority of invention of the broad issue to Peiler and of the specific issue to Howard.

"The question thus raised is whether two patents should issue, one with broad claims and the other with specific claims, both based solely upon identical disclosures.

"We are not unmindful of the decision in Williams vs. Perl C. D. 1899, page 108 in which it was held that two patents could be issued to different inventors under these circumstances and declining to agree with the proposition laid down in the earlier case of Reed vs. Landman C. D. 1891, page 73 that—'generic and specific claims, based upon the same structure of invention, conflict, because the invention is one and the same, whether generically or specifically stated.'

"If it be conceded, as in the present case, that the specific construction disclosed in the Peiler patent and upon which his broad claims are based, was the invention of Howard, then such broad claims must be supported not by the construction disclosed in the patent, but by some prior construction which has not been disclosed. The consideration for the grant of a patent is the disclosure to the public of a construction which at the expiration of the term of the patent will be open for use by them. In Grant v. Raymond, 6 Pet. 218, 8 L. Ed. 376, 1 Whitman's Patent Cases, page 146, Chief Justice Marshall said:

" 'The third section requires, as preliminary to a patent, a correct specification and description of the thing discovered. This is necessary in order to give the public, after the privilege shall expire, the advantage for which the privilege is allowed, and is the foundation of the power to issue the patent.'

"In the case under consideration, when the Peiler patent expires, and the public desires to use what is disclosed therein, they will be met with a contention by the common assignee that they cannot use such construction because it is covered by the patent to Howard, if such patent is granted. It is not as if the Peiler patent disclosed both the construction covered by the Howard claims and also that upon which Peiler bases his claim for priority as to the generic invention, for in' that case the public could use the latter construction. But where only the one construction is disclosed the public could not use the invention unless they were able to invent some other specific construction which would embody the broad invention. It may be that this could be easily done in the present case as it would involve only the omission of the downward convergence of the walls of the impulsion chamber and if the situation had arisen through a split decision in an interference, the interference record might disclose the construction on which the broad invention depended for its support though this might not be so as the exhibits would be withdrawn after the interference was decided. It remains true, however, that there would be nothing in the patent itself which the public could use until after the expiration of the patent on the specific construction and it does not appear to be sound law that a patent should be granted upon a construction which, as disclosed, is not the embodiment of the invention which was produced by the patentee but was that of some other party and, especially, where such other party has obtained a later patent in which case the public receives no consideration for the grant of the patent and acquires no rights upon its expiration. The rejection of claims A and B is made final."

As will be noted, the Board states the issue thus: "The question thus raised is whether two patents should issue, one with broad claims and the other with specific claims, both based solely upon identical disclosures."

If by the words "identical disclosures" the downwardly converging sides only are meant, the statement is substantially correct. Of course, the claims of the Peiler patent are based upon a wider disclosure than the claims here in issue, and, in fact, the disclosure of Peiler of the downwardly converging sides of the impulsion chamber

only goes to the requirement of section 4888, Rev. Stat. (35 USCA § 33), that an applicant must explain the principle of his invention and the best mode in which he has contemplated applying that principle, because he has made no claim that such downwardly converging sides are a part of his invention.

We think the language of the Board last above quoted, viz., "both based upon identical disclosures," was intended by it to be limited to the disclosures in each application of the downwardly converging sides of the impulsion chamber.

Thus construed, we think the Board has correctly stated the issue to be whether two patents should issue, one with broad claims not including the downwardly converging sides of the impulsion chamber, and the other with specific claims embracing such element; it being understood that the claims in issue are for a separate and distinct invention not embraced in the claims of the Peiler patent.

Certainly, if we were not confronted with a common assignee of both inventions, upon the record before us, Howard would clearly be entitled to the allowance of the claims in issue, as an improvement in the invention patented to Peiler, as Peiler in his affidavit impliedly disclaimed being the inventor of such improvement, even though it was described in his application, and also because his application was filed later than that of Howard. Miller v. Eagle Manufacturing Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121. If, in such case, an interference had been declared upon the two applications, upon the record made an award of priority would have been made to Peiler upon claims 47 and 55 of his application, and an award to Howard upon the claims here in issue.

Should a different course be pursued, upon the record before us, because there is a common assignee of the patent to Peiler and the application of Howard?

Because of the presence of such common assignee no interference could be declared between the two applications for the reasons stated in the cases of In re Dunbar, 51 App. D. C. 251, 278 F. 334, and In re Mann & Koppelman, 47 F.(2d) 370, 18 C. C. P. A. 1020, and, if appellant's assignee had included in the Peiler patent claim 25 of the application upon which it is based, or any claim corresponding to the claims here in issue, clearly the claims in issue should have been rejected, even though Howard was in fact the first inventor. In re Dunbar, supra.

However, here the common assignee did not elect to claim in the Peiler patent the invention in issue, but did elect to claim it in the Howard application, the filing date of which antedates that of Peiler. Upon the record of the filing dates of the two applications, Howard was the first inventor of the downwardly converging sides of the impulsion chamber, and, if Peiler could have truthfully sworn that his invention of this element was prior to Howard's invention of it, we perceive no reason why the common assignee would not have elected to have included Peiler's then pending claim 25 in the Peiler patent, which claim embraces the invention here in issue.

The Peiler patent was issued on January 3, 1928, and the record shows that, before and since that time, appellant has prosecuted in the Patent Office, with reasonable promptness, the claims here in issue. There is nothing in the record to indicate that appellant's assignee elected to prosecute the claims here in issue through the Howard application for the purpose of prolonging its monopoly secured by the granting by the board of claims 47 and 55 of the Peiler patent. As a matter of fact, the record shows that the same claims here in issue, differing only in form, were made in the Howard application in 1923, and were rejected by the Primary Examiner in 1927, which was before the issue of the Peiler patent. If they had then been allowed, it is probable that the patent issued thereon would have antedated the Peiler patent, and the monopoly secured upon the specific claims would have expired prior to the monopoly secured by the Peiler patent. If this had occurred, the facts would have been similar to those in the case of Waterbury Buckle Co. v. G. E. Prentice Mfg. Co. (D. C.) 294 F. 930, where it was held that both patents, held by a common assignee, were valid.

We are loath to hold that a party should be denied a patent solely because its grant would extend a monopoly theretofore secured by him, if such extension was due solely to an erroneous decision of the tribunals of the Patent Office, rejecting the claims originally.

We would observe that we have made diligent search for authorities upon the precise questions here involved, but have found none, and the particular state of facts which gives rise to the controversy here seems never to have arisen before in the Patent Office or

in the courts. Our conclusion is based upon the particular facts in the case at bar, and, in view of such facts, we think the Board of Appeals erred in rejecting the claims here in issue.

In view of the conclusion we have reached, it is unnecessary to discuss other questions raised in the briefs of the parties.

Upon the record before us, we hold that the issue of the Peiler patent is not a bar to the allowance of the claims here involved, and the decision of the Board of Appeals of the Patent Office is reversed.

Reversed.