43 C.C.P.A.(Patents)

**Application of Gerald S. KEIM and William Donald Thompson.**

**Patent Appeal No. 6155.**

United States Court of Customs and Patent Appeals.

Jan. 20, 1956.

Clinton F. Miller, Wilmington, Del., for appellants.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 37 to 42, inclusive, of appellants' application for a patent on a process for sizing paper.

The claims have been treated as a unit throughout the consideration of the case in the Patent Office, and in the briefs before us, and it is evident that they must all stand or fall together. Consideration will therefore be confined to claim 37, which is illustrative. The claim reads:

"37. A process for sizing paper comprising forming a web of cellu-

losic fibers, impregnating said web with an aqueous emulsion having in the dispersed phase a dimer of a higher organic ketene so that from 0.01 to 1.0%, based on the weight of the fibers, of said dimer is retained on the web, said ketene having at least 6 carbon atoms and having attached to the $\geq$C$=$C$=$O group only members of the class consisting of hydrogen and hydrocarbon radicals, and reacting said dimer with the cellulose fibers whereby sizing is imparted to the paper."

The references relied on are: Nathansohn, 1,996,707, April 2, 1935; Nathansohn, 2,130,150, September 13, 1938; Deutsche (Gr. Br.), 522,204, June 12, 1940; Hanford et al., 2,284,896, June 2, 1942; Hentrich et al., 2,411,860, December 3, 1946; Broderick, 2,285,490, June 9, 1942; Downey, 2,627,477, February 3, 1953; Adams et al.—Organic Reactions, Vol. III, pages 127–132, 1946; Doggett et al., 2,482,578, September 20, 1949; Kantorowicz, 1,816,973, August 4, 1931; Manufacture of Pulp and Paper, Vol. 4, Sec. 4, page 23, 1928.

Appellants' application here involved discloses a method of sizing paper which comprises forming a web of cellulosic fibers and impregnating it with an aqueous emulsion having in the dispersed phase a dimer of a higher organic ketene in such a manner that from 0.01 to 1.0 per cent, based on the weight of the fibers, is retained on the web. The dimer is then reacted with the paper to impart sizing to it. The application states that, instead of an aqueous emulsion, a solution of the ketene in an organic solvent may be used, although it is indicated that the aqueous dispersion is preferable.

The patent to Downey, No. 2,627,477, was granted February 3, 1953, on an application filed on the same day as appellants' application here involved. It was stated by the Patent Office tribunals that appellants' said application is presumed to be owned by the assignee of the Downey et al. patent and, since this statement has not been controverted, it will be accepted as correct. The patent discloses the preparation of an aqueous emulsion of ketene dimers of the type recited in the appealed claims and refers to the appellants' present application as disclosing that paper may be sized by treatment with such a dimer. No other specific use for the aqueous emulsion is given in the patent, the claims of which are drawn to the emulsion without limitation as to use.

The patent to Hentrich et al. relates to water-repellent textiles, fibers, and the like. Paper is one of the materials casually mentioned, but the specific examples relate to satin and wool. The treatment disclosed comprises the application to the fibers of a solution of a higher molecular ketene in an organic solvent and it is conceded in appellants' brief that the ketenes referred to are considered to be dimers. The concentration of the solution used in the patent is said to be from 0.5 to 8 per cent, the ordinary range being from 1 to 3 per cent. In the applicants' brief on appeal to the Board of Appeals, it was stated that paper normally picks up about twice its own weight of an impregnating solution, so that Hentrich's disclosure amounts to adding from 1 to 16 per cent of the dimer based on the weight of the fibers, with 2 to 6 per cent being recommended for ordinary operations. This statement by the applicant has not been questioned as to accuracy.

The British patent to Deutsche contains the same disclosure as Hentrich and is merely cumulative.

The patent to Hanford et al. discloses a process for rendering cloth or paper water-repellent by treatment with aqueous emulsions or solutions of various compounds. Among the compounds suggested are diketenes which, as the board stated, are to be distinguished from ketene dimers. No specific examples of the treatment of paper or of the proportions of materials to be used therefor are given.

The patents to Nathansohn were cited to show a recognition of the general equivalency of aqueous emulsions and

solutions in the treatment of paper and textiles to render them water-repellent.

The Adams et al. publication was cited to show that ketenes dimerize when heated or allowed to stand at room temperature for a sufficient length of time.

The remainder of the references were cited to show the relationship between sizing and water-repellency. They were not discussed by the board and it is unnecessary to consider them in detail here, since the board agreed with the appellants that there is a distinct difference between sized paper and water-repellent paper. As pointed out by the appellants, paper is made water-repellent by completely covering the cellulosic fibers with a hydrophilic substance, such as wax, or by reacting the cellulosic molecules with chemicals which will change them to relatively hydrophilic compounds; whereas the purpose of sizing is to decrease the rate of penetration into the paper, without rendering it completely impervious.

It was the opinion of the examiner that, since sizing increases the resistance of paper to moisture, the difference between sized paper and water-repellent paper is merely one of degree. However, the references cited do not indicate that that view has been taken by those skilled in the art, nor do they show that it has been customary to use the same materials for both purposes. On the contrary, the patent to Nathansohn, No. 1,996,707, states that it is not possible to make paper completely impermeable to water by the use of resin and alumina, which are conventional sizing materials. Under those circumstances we do not consider that a disclosure in the prior art that a particular material could be used in rendering paper water-repellent would suggest the use of that material for sizing paper.

The appealed claims have been rejected on the patent to Hentrich. As above noted, that patent is concerned primarily with the treatment of textiles and mentions paper only incidentally. The patent specification states that the concentration of the impregnating solution may be varied to suit the materials used, but no specific figures are given for the treatment of paper, the examples given being limited to wool and satin. The patent, therefore, does not fairly disclose the use, in the treatment of paper, of the amounts of ketene dimers to which the appealed claims are limited.

Moreover, all Hentrich's claims, as well as the disclosure of his specification, are directed to the production of water-repellent materials, and thus exclude sized paper, which does not repel water but merely absorbs it to a more limited extent than unsized paper does. There is nothing in the patent which would suggest the use of ketene dimers for sizing. Anyone applying Hentrich's teachings to the treatment of paper, therefore, would do so for the purpose of making the paper water-repellent and, in the absence of any specific examples, would apply enough of the dimers to produce that result. Such a procedure, of course, would not result in the production of sized paper.

The appealed claims further distinguish over Hentrich in specifying that the ketene dimers are applied in the form of aqueous emulsions, whereas Hentrich employs organic solutions.

From the foregoing it appears that Hentrich makes no disclosure or suggestion of sizing paper; that he employs materials specifically different from those claimed by the appellants; and that he does not fairly suggest the use, even of the materials which he does disclose, in the proportions recited in the appealed claims. We accordingly hold that the appealed claims distinguish patentably over Hentrich.

The claims were also rejected on Hentrich in view of either of the Nathansohn patents, which disclose the alternative use of organic solutions and aqueous emulsions in producing water-repellent paper. Those patents, however, do not suggest the use of aqueous emulsions such as are recited in the appealed claims for the sizing of paper and, accordingly,

cannot properly be combined with Hentrich in the rejection of those claims. Moreover, as above noted, the patent to Hentrich does not contain a sufficient disclosure of the use of the ketene dimers in the proportions claimed here.

The appealed claims were further rejected on the patent to Hanford et al. in a manner similar to that applied in connection with Hentrich. Hanford et al., like Hentrich, are concerned with waterproofing rather than sizing and, although they may use aqueous solutions of certain materials, they do not mention ketene dimers. For reasons similar to those given in connection with the Hentrich patent, we hold that the rejection based on Hanford et al. cannot be sustained.

■ The appealed claims have also been rejected as lacking in invention over the subject matter claimed in the patent to Downey. As previously indicated, that patent and the application here involved are presumed to be owned by a common assignee and it is well settled that such an assignee cannot obtain two patents on a single inventive concept, even though applications by different inventors are involved. In re Dunbar, 51 App.D.C. 251, 278 F. 334; In re Mann, 47 F.2d 370, 18 C.C.P.A., Patents, 1020; and In re Willoughby, 88 F.2d 482, 24 C.C.P.A., Patents, 1033.

The Downey patent discloses the aqueous emulsions of ketene dimers referred to in the appealed claims, and states that their use in the sizing of paper is disclosed in the application of Keim et al. which is involved in this appeal. No other specific use for the emulsions is given, but the claims are directed to the emulsions *per se* and make no reference to any use.

■ For the reasons set forth above, we do not consider that the use of the emulsions claimed by Downey for the sizing of paper in the manner set forth in the appealed claims would be obvious to a skilled worker in the art. It follows that the process claimed here involves an invention distinct from and patentable over that claimed in the Downey patent and, accordingly, a rejection based on double patenting is not in order.

The board relied on the case of In re Byck, 48 F.2d 665, 18 C.C.P.A., Patents, 1208, in which it was held that a patentee who had obtained a patent for a new material, which patent described a particular use of the material, could not obtain a second patent based on such use; and the solicitor's brief cites the cases of In re Christmann, 128 F.2d 596, 29 C.C.P.A., Patents, 1037, and In re Freeman, 166 F.2d 178, 35 C.C.P.A., Patents, 920, to the same effect. Those cases are distinguishable from the present one, however, in that in each of them the claims of the application were held to be drawn to an invention not patentably distinct from that claimed in the patent, whereas here the inventions differ patentably.

The present case is quite similar to In re Maxwell, 188 F.2d 479, 38 C.C.P.A., Patents, 1011. That case, like the present one, related to paper making. It involved an application of Maxwell et al. and a patent to Wohnsiedler et al., owned by a common assignee; and the application on which the patent was granted was filed on the same day as the Maxwell et al. application. The patent disclosed a new resin colloid which was said to be useful in making paper, but the claims of the patent were directed to the colloid without limitation as to use. The Maxwell et al. application contained substantially the same disclosure as the patent, but claimed paper treated with the colloid. In reversing a rejection of the claims of Maxwell et al. on the Wohnsiedler et al. patent, this court held that since the use of the colloid in paper making involved an invention distinct from the colloid itself, a patent on paper containing the colloid could properly be granted to Maxwell et al., notwithstanding the fact that the Wohnsiedler et al. patent disclosed such paper.

It will be seen that the facts of the Maxwell case closely parallel those of the present one. It is true, as pointed out by the solicitor, that the Wohnsiedler et al. patent disclosed more than one use of the claimed colloid, while the Downey patent here involved disclosed only the single use of the ketene dimer emulsion which is claimed by the appellants; but the decision in the Maxwell case was not predicated on such additional disclosure by Wohnsiedler et al.

A further case in point here is In re Howard, 19 C.C.P.A., Patents, 759, 53 F.2d 896. That case involved an application of Howard and a patent to Peiler, issued on a later filed application and owned by Howard's assignee. Both the application and patent disclosed a glass feeding apparatus including an impulsion chamber having downwardly converging sides; and no other form for that chamber was disclosed by either. The Peiler patent claimed the feeder, including an impulsion chamber, broadly, while Howard's claims were limited to such a chamber having downwardly converging sides. The Patent Office tribunals rejected Howard's claims on the Peiler patent, relying, as they did in the present case, on the fact that the identical disclosure claimed by the applicant was present in the patent and formed the sole support for some of the patent claims. They argued that two patents based on identical disclosure could not properly be granted to the same assignee.

In reversing the decision of the Board of Appeals in the Howard case, this court pointed out that the rejection clearly could not be sustained except on the ground of election based on common ownership, since Peiler's filing date was not prior to that of Howard; and that, since Howard's claims were to an invention patentably distinct from that claimed by Peiler, it could not be held that the common assignee had made an election adverse to Howard by taking out the Peiler patent.

For the reasons given, and in view of the two decisions last cited, we are of the opinion that the rejection of the appealed claims on the patent to Downey cannot be sustained.

The decision of the Board of Appeals is reversed.

Reversed.

JOHNSON, Judge, dissents.

JACKSON, Judge, retired, recalled to participate.