WoRlet, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the rejection by the Primary Examiner of claims, 1, 2, 4, 5, 7, 8, 9, and 13 to 17, inclusive, of appellants’ application for a patent on a method of detecting flaws in a test body, and a testing agent for use in such method. Claims 1 and 13 are illustrative and read:
1. The method, of detecting in a test body subsurface flaws having surface openings, comprising the steps of applying to the surface of the body a water-emulsifiable testing agent having a color contrasting with the surface of the test body and which will penetrate the surface openings of the subsurface flaws, washing the testing agent from the surface of the body, and exuding from the surface openings of the flaws a portion of the testing agent which had penetrated into the flaws, whereby the location and extent of the flaws will be revealed in visible light by the difference in color of the exuded testing agent and that of the test body.
13. A testing agent for testing bodies for surface discontinuities comprising a substantially anhydrous water-insoluble self-emulsifying flaw-penetrating oily liquid and a color material dispersed in said liquid.
The references relied on are:
Ellis et al., 1,803,008, April 28, 1931.
Kaltenbaeh et ah, 1,930,987, August 8, 1933.
Switzer, 2,259,400, October 14, 1941.
Farbenindustrie (Swiss), 224,242, February 1, 1943.
Ward, 2,405,078, July 30, 1946.
Appellants’ application discloses a process of detecting subsurface flaws which have surface openings. It involves the steps of heating the test body, and applying to its surface a testing agent, preferably water-emulsifiable, with a color contrasting with that of the surface of the test body. The agent penetrates the portions of the flaws which are below the surface, and the portion of it which remains on *1009 the surface is then removed and the remainder is drawn out of the flaws to the surface, where it appears in locations corresponding to the positions of the flaws. The surface is then inspected under light conditions which serve to show up the color contrast between the testing agent and the surface of the body.
The Ellis et al. patent discloses a process for producing a dye composition in which the dye is mixed with a hydrocarbon and dispersing agent, after which water is added.
The Kaltenbach et al. patent discloses the preparation of a dye composition comprising pine oil, dye, and soap, which composition is added to water.
The Switzer patent discloses a flaw detecting process generally similar to that of appellants and involves the steps of applying to the surface of the test body an agent having luminescent properties, which penetrates the flaws in the body, cleaning the body surface, allowing the agent to seep out of the flaws to the surface, where it indicates the positions of the subsurface flaws, and inspecting the surface in a darkened location under ultra-violet light which renders the luminescent agent visible.
The Swiss patent to Farbenindustrie discloses a process of detecting subsurface flaws in which the test body is immersed in a solution of a coloring agent which is visible under daylight conditions. The body is then rinsed and dried, after which the coloring agent seeps out and indicates the position of the flaws.
The Ward patent discloses a process which is said to be an improvement over that of Switzer. The principal improvement described is the use of a water-emulsifiable luminescent testing agent which may be washed from the surface of the test body with water.
As stated in appellants’ reply brief, there are four grounds of rejection involved in tins appeal, namely:
1. A rejection of all the appealed claims on the ground of double patenting in view of the Ward Patent No. 2,405,078.
2. A rejection of all the appealed claims as unpatentable over Ward in view of the Swiss patent to Farbenindustrie and the Switzer patent.
3. A rejection of claims 13 to 17, inclusive, on the patent to Ellis et al.
4. A rejection of claims 13, 14, 16, and 17 on the patent to Kaltenbach et al.
The first two depend upon the correctness of the board’s holding that “we do not find that the appealed claims patentably distinguish from what is claimed in the Ward patent.”
As pointed out by the board, appealed claim 1 is substantially the same as claim 1 of the Ward patent, except that the former calls for the use of a testing agent having a color contrasting with the surface of the test body, while the latter calls for the use of a luminescent *1010 testing agent. Accordingly, if those claims are to be held patentably different, it must be on the ground that the use of a luminescent testing agent and the use of an agent having a color contrasting with that of the body surface constitute two inventively different concepts.
The use of a luminescent testing agent in a process similar to that here is shown in the Switzer patent, and the use, in a similar process, of a testing agent including a substance having a color contrasting with that of the test body is also disclosed by the Swiss patent to Farbenindustrie. Appellants urge that the Swiss patent is not a proper reference because Switzerland was “surrounded by the enemy” from the time the patent was granted until within one year of the filing of appellants’ application. As to that matter, however, we are in agreement with the board that the patent statutes make no distinction as to the availablity to residents of the United States of a regularly issued and published foreign patent, and that the Swiss patent is therefore a proper reference.
It thus appears that, at the time of filing of appellants’ application, as well as the application on which the Ward patent .was granted, the prior art disclosed the use of both luminescent testing agents and agents containing a coloring substance contrasting, in daylight, with the color of the test body. Under .such circumstances we agree with the statement of the board that “We see nothing inventive in substituting a colored material such as shown' by Farbenindustrie for the luminescent or fluorescent material employed by Ward.”
Appellants have made no attempt to differentiate the appealed claims so far as the rejections based on the Ward patent are concerned, and do not appear to deny that, as to those rejections, all the claims will stand or fall together. In view of that fact, and since we agree with the board that the inventive subject matter of the claims on appeal is the same as that of the claims of the Ward patent, it is not necessary to discuss the claims in further detail.'
The double patenting rejection is based on alleged common ownership of appellants’ application and the Ward patent. As to that matter there is a controversy, largely based on assertions which are not of record. The Ward patent, on its face, appears to be owned by Robert C. Switzer and Joseph L. Switzer, and there is no assignment of record here as to that patent or appellants’ application. It appears that as a result of certain statements as to ownership made by appellants, the board finally concluded that “the ownership of the Ward patent rests in R. C. Switzer and J. L. Switzer as joint tenants as a result of a series of mesne assignments, while ownership of the present application is in the same parties but as tenants in common with R. C. Switzer holding a three-quarter interest and J. U. Switzer holding a *1011 one-quarter interest.” Appellants, in tbeir brief here, assert that the board is mistaken and that “The legal difference in ownership is the same as if the patent and application were held by two complete strangers.” In our opinion, however, the ownership of appellants’ application and the Ward patent is not controlling so far as the question óf appellants’ right to a patent containing the appealed claims, is concerned.
As above indicated, the appealed claims and the claims of the Ward patent are directed to a single inventive concept which is independent of whether the material which renders the testing agent effective is a luminescent substance or a daylight-visible dye. Manifestly, that single concept could not have been originated both by Ward as a sole inventor and by the appellants, Ward and Switzer, as joint inventors.
If it be assumed that appellants’ application and the Ward patent were owned by a common assignee when that patent was granted, then that assignee, by taking out the Ward Patent, must be considered to have made an election and to have waived the right to receive a patent for the same invention on appellants’ application. In re Leon Mann and Morris Koppelman, 18 C. C. P. A. (Patents) 1020, 47 F. 2d 310, 8 U. S. Pat. Q. 381; In re Willoughby, 24 C. C. P. A. (Patents) 1033, 88 F. 2d 482, 33 USPQ 46; In re Fischel et al., 30 C. C. P. A. (Patents) 1085, 136 F. 2d 254, 58 USPQ 80; In re Dunbar, 51 App. D. C. 251, 278 Fed. 334. Appellants rely on our decision in In re Stanley et al., 41 C. C. P. A. (Patents) 956, 214 F. 2d 151, 102 USPQ 234, but that decision is not authority for issuing two patents to a common assignee where the claims of the two cases are directed to a single invention. On the contrary, the decision contains the following statement:
The Patent Office relies on the alleged fact, found.by both the examiner and the board, that the claims on appeal do not patentably distinguish over the patent claims to Truitt. If this is true, then the claims must be rejected since an inventor can only receive one patent for one inventive thought, and this rule applies in the case of a common assignee. ⅞ ⅜ ⅜
Mutual cross reading of the claims of an application and patent may be a factor in determining whether double patenting exists ;• hut it is not indispensable to a holding of double patenting. See In re Laughlin, 18 C. C. P. A. (Patents) 1239, 48 F. 2d 921, 9 U. S. Pat. Q. 126; and In re Henri-Georges Doll, 36 C. C. P. A. (Patents) 1140, 175 F. 2d 583, 82 USPQ 188. It is axiomatic that if two patents are to be granted there must be two inventions present. In re Ward, 32 C. C. P. A. (Patents) 1238, 150 F. 2d 436, 66 USPQ 317; and In re Jennings, 35 C. C. P. A. (Patents) 1163, 167 F. 2d 1014, 77 USPQ 613. Accordingly, the fact that, as pointed out by appellants, the *1012 claims of their application and the Ward patent are not mutually cross readable does not establish that the board was in error in its holding of double patenting in the instant case.
For the reasons given, we are of the opinion that, if appellants’ application and the Ward Patent are regarded as owned by a common interest, then that interest is bound by its election in taking out the Ward patent and cannot obtain a second patent containing the appealed claims.
On the other hand, if it be assumed, as contended by appellants, that their application and the ward patent must be considered as independently owned, then, since appellants, as joint inventors, con-stitute an entity distinct from Ward as a sole inventor, and since the application on which the Ward patent issued was filed prior to appellants’ application, appellants are not entitled to a patent containing the appealed claims unless they antedate the Ward patent (35 U. S. C. 102 (e)). This they attempted to do by an affidavit under Patent Office Eule 131. With respect to that affidavit, the board held that “the features of the patent disclosure relied upon in rejecting the appealed claims are also covered by the claims of the patent, so that the patent cannot be removed as a reference by an affidavit under Eule 131.”
Eule 131 provides that an applicant may overcome by affidavit a rejection “on reference to a domestic patent which substantially shows or describes but does not claim, the rejected invention.” [Italics ours.] It seems clear from that language that the rule has no application to a situation in which an applicant is seeking the allowance of claims which do not differ materially from those of the reference patent; and we have so held in connection with former Patent Office Eule 75, which contained substantially the same provision as present Eule 131. In re Albert Charles Fischer, 19 C. C. P. A. (Patents) 1231, 58 F. 2d 1058, 13 U. S. Pat. Q. 386; and In re Louis Boudin, 19 C. C. P. A. (Patents) 1187, 58 F. 2d 448, 13 U. S. Pat. Q. 257. Accordingly, we agree with the board that appellants’ affidavit under Eule 131 is ineffective to-remove the Ward patent as a reference.
For the reasons stated, we are of the opinion the rejection of all the appealed claims was proper and it is unnecessary to consider the further rejection of certain claims on the Ellis et al. and Kaltenbach et al. patents.
■ The decision of the Board of Appeals is affirmed.
JacesoN, Judge, retired, recalled to participate.
O’CoNNell, J., because of illness, did not participate in the hearing or decision of this case.